UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

                                                                11 CR 1036 (RPP)

       - v. -

                                                              **ORDER**

SHANTA ROBINSON,

                Defendant.
------------------------------------------------------------X
**ROBERT P. PATTERSON, JR., U.S.D.J.**

       On August 23, 2012 defendant moved to challenge her competency to stand trial pursuant to 18 U.S.C. § 4241(a). A competency hearing was held on September 13, 2012. The witnesses were forensic psychologists Dr. Marc Janoson, Jr. for the defendant and Dr. Cheryl Paradis for the prosecution. On October 9, the Court received the post hearing briefs of the parties.

       Dr. Janoson testified that he first had the defendant complete a test called the Wechsler Adult Intelligence Scale Fourth Edition (WAIS-IV). (Tr., 6) and then had her complete the Fitness Assessment Instrument, the CAST*MR, the MacArthur Competence Assessment Tool Criminal Adjudication (MACCAT-CA.) and the MMFI-2, a personality instrument.

       Dr. Janoson found, based on the results of the WAIS-IV, that defendant had an IQ of 70 which he described as within the "borderline range of mental retardation." (Tr., 8-11). As Dr. Janoson explained in his report, the WAIS-IV is not in itself evidence of defendant's incompetency because the other tests he administered are more specifically designed to "provide information on competence to stand trial for adult defendants with mental retardation" (DXD at 5).

1

Dr. Janoson next had the defendant complete the "Fitness Assessment Instrument (FAI)," which was comprised of fifteen questions of which, Dr. Janoson testified, seven are critical questions, which "must be passed" for the defendant to be rated "fit to proceed" to trial (Tr., 11-13). Dr. Janoson found that defendant's answers to three of the critical seven questions showed she was not competent to proceed to trial: 1) she "does not believe the charges she faced are serious because she felt she was not guilty of any of these charges" (Aggravated Indemnity Theft and Conspiracy); 2) she "does not understand alternate pleas, for example, insanity, plea bargaining"; and 3) she does not understand the role of the Judge, prosecutor, defense attorney and jury because her answer to the role of prosecutor was inadequate. (DR-1 & DXD at 5).

The Court reviews these questions in the light of the evidence of defendant's prior experience and its own knowledge and observations in New York State criminal court proceedings. Accordingly, in view of the framing of the first question asked how "she views the seriousness of the charges," the Court concludes that Dr. Janoson failed to recognize that defendant had reasonably considered the question as not asking how serious the charge was but as asking how "serious" (i.e. strong) she believed the evidence against her was.

As to the second question, again defendant's understanding of plea bargaining would be based on her own experience in plea bargaining in state criminal court for shoplifting (Tr., 103) where plea bargaining generally does consist of an offer of a plea to a lesser charge by the Judge and no counter offers from defense, not sophisticated plea bargaining which is made in more significant proceedings that Dr. Janoson apparently had in mind (Tr. 17, DXD -5). As to her failure to know the role of the prosecutor, the record disclosed that defendant had not been to trial before. (Tr., 103)  Accordingly, her answer indicated a lack of knowledge of the

2

prosecutor's role at trial not to lack of competency, if properly prepared for trial, to understand the nature of trial proceedings.

Dr. Janoson then administered the CAST*MR (Competence for Standing Trial for Defendants with Mental Retardation). (Tr. 19, DXC-1) to which there are three components: (I) Basic Legal Concepts (25 multiple choice questions); (II) Skills to Assist Defense (15 multiple choice questions): and (III) Understanding Case Events (10 multiple choice questions). (Tr. 20-23, DXC-1).   He scored defendant with high scores on sub parts I and III but failed her on subpart II.  As an example of her incorrect responses in component II, Dr. Janoson found that defendant's answer that, "she would deny to her attorney having stolen something from a store" was incorrect.  However, in this Court's experience such an answer is common among defendants in the criminal court of the City of New York.  Dr. Janoson also found incorrect the defendant's answer to the question, "what if your lawyer asks you to do something you don't want to do like getting a haircut?"  Her answer was, "ignore him (the lawyer) and do what you want to do."  Here the question's suggestion that a female get a haircut does not appear in any way related to the defense of the case so defendant's answer seems correct.

These answers, in this Court's experience, in the state criminal courts are not unusual and do not evidence a defendant's lack of competency but rather reflect a concern that the lawyer will not support a defendant's wish to take the stand and lie in her own defense.  Experts in lawyers ethics have long disputed the obligations of lawyers in such circumstances. See Monroe H. Freedman, *Professional Responsibility of the Criminal Defense Lawyer: The Three Hardest Questions*, 64 Mich. L. Rev. 1469, 1478 (1966) and Monroe H. Freedman & Abbe Smith, *Understanding Lawyers' Ethics*, 159-95 (3d.ed. 2004) and Stephen Gillers, Monroe Freedman's *Solution to the Criminal Defense Lawyer's Trilemma Is Wrong as a Matter of Policy and*

3

*Constitutional Law*, 34 Hofstra L. Rev. 821 (2006).  In response to the question, "fellow prisoner suggests to defendant to change her story a little because [you] will get off easier.  What would you do?"  Defendant answered, "change my story a little."  This answer does not show lack of mental competency to stand trial or to assist lawyers in her defense but rather a lack of trust in the judicial system, lack of prior education about trial proceedings on one of the many ways  in which a defendant can be misled.  In such circumstances a willingness, when she has no experience with trials, to take advice from a person in the same fix as herself is not a showing of lack of mental competency.  It merely shows the defendant has to be thoroughly prepared by her attorney as to how trials are conducted and how to, and how not to, conduct herself.

   The government, on cross-examination, elicited from Dr. Janoson that defendant had travelled on her own to his office in Nassau County, Long Island for the three interviews he conducted of her in his office, elicited that Dr. Janoson had not found that defendant was suffering from any mental disease (Tr., 77) and that the MMFI report noted that the defendant may have over-reported some of her problems. (Tr., 71-73, Def. Ex. D).

   The government's expert, Dr. Cheryl Paradis, pointed out that Defendant was a high school graduate and had earned 10-12 credits in college. (Tr., 101)  Dr. Paradis testified that the answers marked incorrect by Dr. Janoson reflect a lack of prior education in the pitfalls that can confront a defendant during a trial rather than a lack of competency to stand trial and assist one's lawyer in defense to the charges. (Tr., 116)  Thus, she can find the Court's conclusion that the defendant's answers on the (CAST*MR) were inappropriate to prove a lack of competency.

   The remainder of Dr. Paradis testimony reflected that she had done an extended and thorough questioning of defendant about her prior arrests and found she had an adequate understanding of the legal system (Tr., 105) and that she understood the nature of the charges

she was facing and the role of the prosecutor and defense attorney, and the possible consequences of the trial proceeding and that she has the mental ability to assist in the defense of the charge. (Tr., 101, 115- 118, 124)

Accordingly, the Court finds by a preponderance of the evidence that the defendant is not suffering from a mental disorder or defect rendering her mentally incompetent to the extent that she is unable to understand the material consequences of the proceedings or to assist properly in her defense as required by 18 U.S.C. § 4241(a).  As Dr. Paradis testimony showed, once the questions were put into context for her, the defendant demonstrated an understanding of the purpose of the questions and gave correct answers.  Although the defendant does need to be educated by her lawyer in what goes on in trials and on the various pitfalls in failing to trust your lawyer may have to be explained to her in some detail, it is the finding of this Court that defendant is not incompetent and suffers no mental defect or disorder.  She has the mental ability to assist her attorney in her defense and can understand the judicial proceedings she is facing in this case.

On September 18, 2012, the defendant appeared for a bail revocation hearing based on her arrest on September 15, 2012, two days after the competency hearing.  At that hearing, the defendant presented a different demeanor.  During the competency hearing, the defendant affected disinterest, continuously swayed back and forth in her seat, looked at the ceiling.  At the bail revocation hearing, she testified articulately sitting upright and gave direct answers to questions and reasoned responses as to why circumstances forced her to continue living in a house with co-defendants despite the new charge and threats by a relative.  At no time did she sway back and forth in her seat and show disinterest in the proceeding.  This appearance before

5

Defendant presented a different demeanor than the one she showed at the competency hearing. During the competency hearing, the defendant affected disinterest, continuously swayed back and forth in her seat, and generally looked at the ceiling. At the bail revocation hearing, however, she testified articulately, sitting upright, gave direct answers to questions, and provided reasoned responses as to why circumstances forced her to continue living in a house with her co-defendants, despite the new charge and threats by a relative. At no time did she sway back and forth in her seat or show disinterest in the proceeding. This appearance before the Court confirms the Court's conclusion that she is competent to stand trial and to assist her attorney in her own defense.

IT IS SO ORDERED.

Dated:  New York, New York
        October 19, 2012

_____
Robert P. Patterson, Jr.
U.S.D.J.

Copies of this Order were faxed to:

*Counsel for Defendant:*

**Richard Bruce Lind**
Richard Lind Attorney at Law
488 Madison Avenue
19th Floor
New York, NY 10022
212 888-7725
Fax: 212 371 2961

*Counsel for the Government:*

**Andrew Daniel Goldstein**
United States Attorney Office, SDNY
One Saint Andrew's Plaza
New York, NY 10007
(212)-637-1559
Fax: (212)-637-2527
Email: andrew.goldstein@usdoj.gov